**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| LAERDAL MEDICAL CORPORATION and LAERDAL MEDICAL A/S, | CIVIL ACTION NO. _____ |
|                     Plaintiffs, | |
|    v. | |
| BASIC MEDICAL SUPPLY, LLC; MEDSOURCE INTERNATIONAL CO., LTD.; and MEDSOURCE FACTORY, INC., | **Jury Trial Requested** |
|                   Defendants. | |

<u>**COMPLAINT**</u>

Plaintiffs Laerdal Medical Corporation and Laerdal Medical A/S hereby bring this action against Basic Medical Supply, Medsource International Co., Ltd., and Medsource Factory, Inc. (collectively, "Defendants"), alleging as follows:

**I.      PARTIES**

1.     Plaintiff Laerdal Medical A/S ("Laerdal") is a Norway-based company having a principal place of business in Stavanger, Norway.

2.     Plaintiff Laerdal Medical Corporation ("Laerdal USA") is a New York corporation having a principal place of business in Wappingers Falls, New York. Laerdal USA is a wholly-owned subsidiary of Laerdal, and is the exclusive United States distributor for Laerdal-branded products.

17526.0010 -V1

3.     Defendant Basic Medical Supply, LLC ("Basic") is, on information and belief, a company organized and existing under the laws of the State of Texas, having a principal place of business in Richmond, Texas.  On information and belief, Jason Lu is identified as the Sales Manager of Basic, he has been identified in communications from at least one sales representative of Basic as "our boss," and, on information and belief, is identified (as "Lu Guofang") as the "US Agent" for Basic in Basic's FDA registration.

4.     Defendant Medsource International Co., Ltd. ("Medsource International") is, on information and belief, a corporation organized and existing under the laws of China.  On information and belief, Medsource International is an alter ego of Basic as shown by the facts, among others, that:

a.     The two companies share the same or overlapping management.  For example, Jason Lu has identified himself in correspondence with at least one purchaser of infringing product in the United States as the "owner" of Medsource International; he is identified as the point of contact for product orders for goods offered by Medsource International on numerous websites, including Alibaba.com, http://gomedsource.en.alibaba.com/contactinfo.html;

b.     On at least one occasion a representative of Medsource International provided a quote to sell infringing product to a United States purchaser in response to a request to purchase such product that was submitted to Basic; on information and belief, Medsource International routinely responds directly to purchase requests submitted to Basic;

c.     On at least one occasion payment submitted by a United States purchaser to Basic was routed to Medsource International's account; on information and belief payment submitted to Basic is routinely routed to Medsource International's account;

d.     On several occasions "Jason" has corresponded directly with United States purchasers who submitted requests to purchase infringing product to Basic concerning various aspects of the transaction, such as logistical details of shipments of infringing product into the

United States; on information and belief, this individual is Jason Lu, and he routinely corresponds with United States purchasers of infringing product concerning such matters;

      e.      The Medsource International website, at http://www.gomedsource.com.cn/article-detail-id-16.html, represents that one of the company's locations is 19902 Flax Flower Dr., Richmond, TX 77407, which is the same address provided for Basic on Basic's website;

      f.      The Basic website provides a link to the Medsource International website under a category of "Related Websites" on most or all pages of the Basic website.

      5.      Defendant Medsource Factory, Inc. ("Medsource Factory") is, on information and belief, a corporation organized and existing under the laws of China.  On information and belief, Medsource Factory is an alter ego of Medsource International as shown by the facts, among others, that:

      a.      The two companies share or have shared the same address, the same website branding and logo, the same email domain and, on information and belief, the same or overlapping management;

      b.      Medsource International is identified as the "owner/operator," and Jason Lu (as Lu Guofang) is identified as the "Official Correspondent," for Medsource Factory in Medsource Factory's FDA registration;

      c.      The Medsource International website states that "we (**Medsource** Factory, Inc. ) do manufacturer lot's of medical products by ourself [sic]." (bolding in original)

      d.      The Medsource International website provides a link to the Medsource Factory website under a category of "Related Websites" on most or all pages of the Medsource International website;

      6.      In addition, Medsource Factory is an alter ego of Basic, for at least the reasons set forth in paragraphs 4 and 5 above, and because the Basic website provides a link to the

17526.0010 -V1

Medsource Factory website under a category of "Related Websites" on most or all pages of the Basic website.

## II.    JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. §§ 1331 and 1338.

8.     On information and belief, this Court has personal jurisdiction over Basic for the reason, among others, that Basic's principal place of business is located in Richmond, Texas.

9.     On information and belief, this Court has personal jurisdiction over Medsource International for the reasons, among others, that (i) Medsource International sells infringing product in Texas, (ii) Medsource International acts through Basic to transact business in Texas, (iii) Medsource International manufactures products with the intention of selling and marketing those products in Texas through Basic, and (iv) Basic is an alter ego of Medsource International..

10.     On information and belief, this Court has personal jurisdiction over Medsource Factory for the reasons, among others, that (i) Medsource Factory sells infringing product in Texas, (ii) Medsource Factory acts through Basic to transact business in Texas, (iii) Medsource Factory manufactures products with the intention of selling and marketing those products in Texas through Basic, and (iv) Basic is an alter ego of Medsource International, which is an alter ego of Medsource Factory.

11.     Venue is proper in this District pursuant to 28 U.S. Code §§ 1391 and 1400(b). Plaintiffs are informed and believe and on that basis allege that a substantial part of Defendants' infringing acts giving rise to Laerdal's claims occurred in this District.

## III.    FACTUAL ALLEGATIONS

## A.    Laerdal USA's '315 and '058 Patents and Defendants' Infringing Cervical Collars

12.     Laerdal is an innovator in the field of medical devices for trauma victims, including immobilization devices for use in the treatment of neck and spine injuries.  One such

device is the Laerdal Stifneck Select® Extrication Collar ("Stifneck Select®"), which Laerdal USA distributes and sells within the United States.

13.     Laerdal USA owns U.S. Patent No. 5,795,315 ("the '315 Patent") and U.S. Patent No. 6,090,058 ("the '058 Patent").  A true and correct copy of the '315 and '058 Patents are attached hereto as Exhibits 1-2, respectively.

14.     The '315 and '058 Patents cover the structure and use of the Stifneck Select® collar.  Stifneck Select® collars have been and are consistently marked with a notice that the product is protected under, *inter alia*, the '315 Patent.

15.     Each of Defendants has offered, and Medsource International and Medsource Factory currently offer, to sell in the United States a line of cervical collars that they refer to as the "Adjustale [sic] Extrication Collar."  In the English-language "Immobilization" product catalog downloadable on its English-language website at http://www.gomedsource.com.cn/article-detail-id-15.html, Medsource International has and currently does advertise, distribute and offer these collars for sale under two item numbers, MS-EX700 (Adult) and MS-EX701 (Pediatric).  On its English-language website at http://www.gomedsunline.com/product-index-cid-801.html, Medsource Factory has and currently does advertise, distribute and offer these collars for sale under the name "Adjustale [sic] Extrication Collar."  On its English-language website, Basic currently provides links to the Medsource International and Medsource Factory websites on which the Medsource Collar is marketed and offered for sale, and has in the past advertised, distributed and offered the Medsource Collar for sale at http://www.basic-medicalsupply.com/product-index-cid-404.html. These collars are, on information and belief, identical and are referred to herein as "the Medsource Collars."  True and correct copies of (i) a portion of the Medsource International "Immobilization" catalog, and (ii) a page on the Medsource Factory website, both of which are currently available for viewing and download on Defendants' websites on which these products have been and are advertised and offered for sale, are attached hereto as Exhibit 3.

- 5 -

16.     Basic and Medsource International have sold the Medsource Collar in the United States and imported the Medsource Collar into the United States, including but not limited to a shipment of 50 units of the MS-EX700 collar and 50 units of the MS-701 collar that were sold in and imported into the United States in or about January 2015.

17.     The Medsource Collar is a knockoff of the Laerdal Stifneck Select® cervical collar.  Nearly every detail of Laerdal's patented product is replicated in the Medsource Collar, including the shape and curvature of the neck band and mandible support, the dimensions of the product, the shape and placement of the sizing holes on the band, the location and structure of the locking mechanism, and the type, placement, shape and size of the fasteners attached to the ends of the neck band.  Even the blue, yellow and white color scheme used on Laerdal's Stifneck Select® collars is replicated in the Medsource Collar.

18.     The Medsource Collar is a multiple position cervical collar that includes a band formed of a stiff material that has a front portion and a back portion.

19.     The Medsource Collar includes a mandible support formed of a stiff material that has a central chin cup and a pair of wing portions, each of which is located on one of the sides of the chin cup.

20.     The Medsource Collar includes a connection between the mandible support and the band providing a series of selectable predefined positions between the two wing portions of the mandible support, each of which defines a different distance between the center of the chin cup and a fixed point on the band.  The collar also includes a projection located on the band that is movable from an unengaged position to an engaged position in cooperation with one of four openings on the mandible support.

21.     Included within the product packaging for the Medsource Collar is a "Manual of Cervical collar" [sic] containing instructions for use of the product.  This "Manual" is a nearly verbatim copy of the instructions included with the genuine Laerdal Stifneck Select® cervical collar.  The Medsource "Manual of Cervical collar" instructs the user to, among other things:

- 6 -

- "1.Measure the patient/Align the head to neutral or 'eyes forward' position unless contraindicated by your protocol";

- "2.Match the collar size to the patient/Choose from 4 adult and 3 child size collars.  Plastic edge to hole or to black post if assembled";

- "3.Adjust and lock the adjustable collar/Adjust the chin support to the size selected/Lock both sides by pressing the two lock tabs";

- "5.Apply the collar while manually maintaining neutral head position/Place the chin support well under the chin./Pull the back of the collar snug while holding the front in place,then [sic] fasten/For a supine patient, slide the rear panel behind the neck before placing the chin support".

A true and correct copy of the "Manual of Cervical collar" is attached hereto as Exhibit 4.

**B.    Laerdal USA's '627 Patent, Laerdal's'147 Registration, and Defendants' Infringing Spine Board**

22.     Laerdal USA distributes and sells a line of Laerdal-branded spine boards in the United States under the mark "BaXstrap®."  The BaXstrap® spine board is used to transport trauma victims from the scene of the injury to an ambulance or other means of transportation by which they may be taken to a hospital or other medical care facility.

23.     U.S. Patent No. 5,950,627 ("the '627 Patent"), which is owned by Laerdal USA, covers the structure and use of the BaXstrap® spine board.  BaXstrap® spine boards have been and are consistently marked with a notice that the product is protected under the '627 Patent in, e.g., Directions for Use that accompany the product.  A true and correct copy of the '627 Patent is attached hereto as Exhibit 5.

24.     Laerdal owns U.S. Trademark Registration No. 3,735,147, on the Principal Register of the U.S. Patent and Trademark Office, for the mark BAXSTRAP.  The '147 Registration covers the use of the mark for "medical apparatus, namely, stretchers, spine boards,

spine board straps, head immobilizers, alignment pads, backboard pads, in class 10." A true and correct copy of the '147 Registration is attached hereto as Exhibit 6.

25.     Laerdal filed, and the Patent and Trademark Office accepted, declarations under Sections 8 and 15 of the Lanham Trademark Act, 15 U.S.C. §§ 1058, 1065, for the registration. The '147 Registration is incontestable.

26.     Laerdal has used the BAXSTRAP mark in commerce in the United States to brand its spine boards since at least January 1997, and the mark has gained substantial recognition in the market for medical products. Laerdal USA has distributed spine boards under the BAXSTRAP mark in commerce in the United States since at least January 1997.

27.     Defendants import, use, sell, and offer to sell in the United States a line of spine boards referred to as "Backboard(BB9)," the "BasicStrap Spineboard" or the "BaXstrap Spineboard" ("Medsource Spineboard").

28.     On its English-language website at http://www.gomedsource.com.cn/product-index-cid-592.html and in the English-language "Immobilization" product catalog downloadable on its website at http://www.gomedsource.com.cn/article-detail-id-15.html, Medsource International has and currently does advertise, distribute and offer several different versions of the Medsource Spineboard for sale; the associated item numbers are MS-BB9Y, MS-BB9OR and MS-BB9BL. On its English-language website at http://www.gomedsunline.com/product-index-cid-869.html, Medsource Factory has and currently does advertise, distribute and offer the same spine boards for sale, item numbers MS-BB9Y, MS-BB9OR, and markets them as the "BaXstrap Spineboard" via a link to the Basic website. On its English-language website at http://www.basic-medicalsupply.com/product-index-cid-592.html, Basic has and currently does advertise, distribute and offer the same spine boards for sale, item numbers MS-BB9Y, MS-BB9OR, and markets them as the "BaXstrap Spineboard." True and correct copies of (i) a page on the Medsource International website, (ii) a portion of the Medsource International "Immobilization" catalog, (iii) a page on the Medsource Factory website, and (iv) a page on the

Basic website, all of which are currently available for viewing and download on Defendants'
websites on which these products have been and are advertised and offered for sale, are attached
hereto as Exhibit 7.

29.     Basic and Medsource International have sold the Medsource Spineboard in the
United States and imported the Medsource Spineboard into the United States, including but not
limited to a shipment of 6 units of the Medsource Spineboard that were sold in and imported into
the United States in or about January 2015.

30.     The Medsource Spineboard is a knockoff of the Laerdal BaXstrap spine board.
The boards are nearly identical in size and appearance, each of them having 14 handholds and 12
pins.  In addition, the interior of the Medsource Spineboard contains two rigid carbon fiber rods,
each of which runs longitudinally near a periphery of the board, exactly as does Laerdal's
genuine BaXstrap® spine board.

31.     The Medsource Spineboard has a polymeric outer shell that defines an interior
space, has upper and lower surfaces and a peripheral surface linking the upper and lower
surfaces, and has a length and width.

32.     There are two carbon rods located within the outer shell of the Medsource
Spineboard, which extend approximately the length of the outer shell.

33.     The Medsource Spineboard has connectors linking the carbon rods to the outer
shell.

**C.      Laerdal USA's '486 Patent, Laerdal's STA-BLOK mark, and Defendants'
         Infringing Head Immobilizer**

34.     Laerdal USA distributes and sells a line of Laerdal-branded head immobilization
blocks in the United States under the mark "STA-BLOK."

35.     U.S. Patent No. 6,170,486 ("the '486 Patent"), which is owned by Laerdal USA,
covers the structure and use of the Sta-Blok™ head immobilizer.  The Directions for Use
accompanying the Sta-Blok™ head immobilizer have been and are consistently marked with a

notice that the product is protected under the '486 Patent.  A true and correct copy of the '486 Patent is attached hereto as Exhibit 8.

36.     Laerdal has used the STA-BLOK mark in commerce in the United States to brand its head immobilizers since at least January 2003, and the STA-BLOK mark has achieved substantial recognition among consumers in the market for immobilization devices.  Laerdal USA has distributed head immobilizers under the STA-BLOK mark in commerce in the United States since at least January 2003.

37.     On its English-language website at http://www.gomedsource.com.cn/product-index-cid-406.html and in the English-language "Immobilization" product catalog downloadable on its English-language website at http://www.gomedsource.com.cn/article-detail-id-15.html, Medsource International has and currently does advertise, distribute and offer the "Head Immobilizer(100)" for sale.  On its English-language website at http://www.gomedsunline.com/product-index-cid-857.html, Medsource Factory has and currently does advertise, distribute and offer the "Head Immobilizer(100)" for sale.  On its English-language website at http://www.basic-medicalsupply.com/product-index-cid-406.html, Basic has and currently does advertise, distribute and offer the "Head Immobilizer(100)" for sale.  True and correct copies of (i) a page on the Medsource International website, (ii) a portion of the Medsource International "Immobilization" catalog, (iii) a page on the Medsource Factory website, and (iv) a page on the Basic website, all of which are currently available for viewing and download on Defendants' websites on which these products have been and are advertised and offered for sale, are attached hereto as Exhibit 9.

38.     The Medsource Immobilizer is a knockoff of the Laerdal Sta-Blok™ head immobilizer.  Nearly every detail of Laerdal's Sta-Blok™ product is duplicated in the Medsource Immobilizer, including the shape and configuration of the head blocks, the structure of the strap connecting the two blocks, the structure of the base; even the blue and white color arrangement of the genuine Laerdal product and the copycat Medsource product is identical.

- 10 -

39.     On information and belief, the Medsource Immobilizer has a head support cushion for placement beneath a patient's head that causes an elevation of at least one centimeter, the support cushion having on a lower surface a layer of adhesive for attaching the support cushion to the back support board and on an upper surface hook in loop fastening material.

40.     On information and belief, the Medsource Immobilizer has two head support blocks for placement on a left side and a right side of a patient's head leaving the patient's ears uncovered, the head support blocks covered with a layer of hook in loop fastening material complementary to the hook in loop fastening material on the upper surface of the support cushion.

41.     On information and belief, the Medsource Immobilizer has a strap for further immobilizing a patient's head by extending from an upper end of a first head support block across a patient's forehead to an upper end of a second head support block, the strap bearing hook in loop fastening material complementary to hook in loop fastening material on the upper ends of the head support blocks for affixing the strap to the blocks.

42.     On its website and in its product catalog, Medsource refers to the Medsource Immobilizer as "he [sic] Sta-Blok . . . ."

43.     The Sta-Blok™ head immobilizer and Medsource's "Sta-Blok" branded immobilizer compete directly with one another through identical channels of trade.

**D.     Laerdal's '656 Registration and Defendants' "Pocket Mask"-Branded CPR Masks**

44.     Laerdal USA distributes and sells a line of Laerdal-branded CPR masks in the United States under the mark "POCKET MASK."

45.     Laerdal owns U.S. Trademark Registration No. 3,476,656 ("the '656 Registration"), on the Principal Register of the U.S. Patent and Trademark Office, for the mark POCKET MASK for "cardiopulmonary resuscitation device, namely, protective oral barrier with disposable valve for use during mouth-to-mouth resuscitation to minimize cross moisture

contact, in class 10." A true and correct copy of the '656 Registration is attached hereto as Exhibit 10.

46.     Laerdal filed, and the Patent and Trademark Office accepted, declarations under Sections 8 and 15 of the Lanham Trademark Act, 15 U.S.C. §§ 1058, 1065, for the registration. The '656 Registration is incontestable.

47.     Laerdal has used the POCKET MASK mark in commerce in the United States to brand its CPR masks since at least 1971, and the mark has gained substantial recognition in the market for medical products.  Laerdal USA has distributed CPR masks under the POCKET MASK mark in commerce in the United States since at least January 1971.

48.     On its English-language website at, e.g., http://www.gomedsource.com.cn/product-index-cid-387.html and in the English-language "Breathing & Respiratory" product catalog downloadable on its English-language website at http://www.gomedsource.com.cn/article-detail-id-15.html, Medsource International has and currently does advertise, distribute and offer several different versions of CPR masks branded as the "Pocket Mask" for sale; the associated item numbers are MS-PM103, MS-PM103W, MS-PM010, MS-PM020, MS-PM030, and MS-PM031.  On its English-language website www.gomedsunline.com, Medsource Factory advertises, distributes and offers for sale the same CPR masks under the same "Pocket Mask" brand and model numbers via a link on its "Download Catalog" webpage, http://www.gomedsunline.com/article-detail-id-15.html (advertising "Pocket Masks" under the "Breathing & Respiratory" catalog), and via a link on that page to the Basic webpage on which the MS-PM103, MS-PM103W, MS-PM010, MS-PM020, MS-PM030, and MS-PM031 masks are offered for sale.  On its English-language website at, e.g., http://www.basic-medicalsupply.com/product-index-cid-387.html, Basic has and currently does advertise, distribute and offer the MS-PM103, MS-PM103W, MS-PM010, MS-PM020, MS-PM030, and MS-PM031 CPR masks under the same "Pocket Mask" brand.  True and correct copies of (i) pages on the Medsource International website, (ii) a portion of the

- 12 -

Medsource International "Breathing & Respiratory" catalog, and (iii) pages on the Basic website, all of which are currently available for viewing and download on Defendants' websites on which these products have been and are advertised and offered for sale, are attached hereto as Exhibit 11.

49.     Basic and Medsource International have sold counterfeit "Pocket Masks" in the United States, including but not limited to a shipment of 50 counterfeit "Pocket Masks that were sold in and imported into the United States in or about January 2015.

**E.     Defendants' False Promise to Cease and Desist**

50.     In or about January 2015, in response to a purchase inquiry submitted to Basic from a purchaser located in the United States, Medsource International shipped the following infringing product into the United States:

        a.     MS-EX700 (50 units);

        b.     MS-EX701 (50 units);

        c.     MS-BB9Y (6 units);

        d.     MS-PM103W (50 units).

51.     On March 30, 2015 plaintiffs' counsel sent each of Medsource International and Basic a letter informing them of (i) Laerdal's Stifneck Select® collars and the '315 and '058 Patents, (ii) the fact that the Medsource Collar is a slavish knockoff of Laerdal's Stifneck Select® collars, (iii) the fact the Medsource Collar infringes at least claims 1-8 and 11-40 of the '315 Patent, and (iv) the fact that the instructions contained in the "Manual of Cervical collar" distributed with the Medsource Collar induce infringement of the '058 Patent.  Plaintiffs' counsel attached a claim chart demonstrating that the Medsource Collar infringes claim 1 of the '315 Patent.  Plaintiffs' counsel further informed Medsource International and Basic of (i) Laerdal's BaXstrap® spine boards and the '627 Patent, (ii) the fact that the Medsource Spineboard is a slavish knockoff of Laerdal's BaXstrap® spine board, and (iii) the fact the Medsource Spineboard infringes at least claims 19, 22-28, 39, 50 and 53 of the '627 Patent.  Plaintiffs'

- 13 -

counsel attached a claim chart demonstrating that the Medsource Spineboard infringes claim 19 of the '627 Patent.  Plaintiffs' counsel demanded, among other things, that Medsource International and Basic discontinue importation and sales of the infringing Medsource Collars and Spineboards by April 13, 2015.

52.     Later that day, "Jason from Medsource" responded by email that "we will move all these products from our website."

53.     On April 2, 2015, Plaintiffs' counsel sent Mr. Lu a letter informing Medsource International and Basic of (i) Laerdal's Sta-Blok™ head immobilizers and the '486 Patent, (ii) the fact that the Medsource Immobilizer is a slavish knockoff of Laerdal's Sta-Blok™ head immobilizer, (iii) the fact the Medsource Immobilizer infringes at least claims 1 and 6 of the '486 Patent, and (iv) Medsource International and Basic's unfair competition in violation of section 43(a) of the Lanham Act due to their references to the Medsource Immobilizer as the "Sta-Blok."  In addition, Laerdal's counsel informed Medsource International and Basic of their infringement of the '656 Registration by their use of "Pocket Mask" to brand their competing CPR masks.  Laerdal's counsel demanded, among other things, that Medsource discontinue importation and sales of the infringing Medsource Immobilizers, as well as all advertising, marketing, branding or other use in commerce of (i) the mark "Sta-Blok" to brand any head immobilizers, and (ii) the mark "Pocket Mask" to brand any CPR masks, by April 13, 2015.

54.     Plaintiffs' counsel received no response to his April 2, 2015 letter.

55.     Subsequently, neither Medsource International nor Basic discontinued advertising, marketing, selling and offering to sell in the United States the products identified in plaintiffs' counsel's letters.  Although Basic discontinued directly offering the Medsource Collars for sale on its website, it continued to do so indirectly and through its alter egos by providing links to the Medsource International and Medsource Factory websites on the Basic website, on which the Medsource Collar is marketed and offered for sale.  All of the infringing products remained available, and are currently available, on or through the Basic and Medsource

- 14 -

websites.  In addition, plaintiffs subsequently became aware of Medsource Factory, which is selling, offering to sell, advertising, distributing and promoting the same goods that had previously been the subject of Laerdal's counsel's cease and desist letters.

**COUNT I**

**INFRINGEMENT OF THE '315 PATENT**

**(Against Basic, Medsource International and Medsource Factory)**

56.     Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

57.     The Medsource Collar includes the structure recited in at least claims 1-8 and 11-40 of the '315 Patent.

58.     Each of Defendants has infringed and continues to infringe at least claims 1-8 and 11-40 of the '315 Patent by using, selling or offering to sell in the United States and/or by importing into the United States the Medsource Collar.

59.     Each of Defendants has induced and continues to induce infringement of one or more claims of the '315 Patent in the United States by, among others, emergency medical technicians, paramedics and other first responders.  Each of Defendants has known of the '315 Patent since at least March 30, 2015, and has known or acted with willful blindness to the likelihood that the use of the Medsource Collar infringes the '315 Patent.  Each of Defendants knows and at all relevant times has known of the fact that each Medsource Collar includes a "Manual of Cervical collar" [sic] that includes instructions for use of the collar.  Each of Defendants intends that the infringing products be used in a manner that infringes the '315 Patent.

60.     Defendants' infringement of the '315 Patent has been and continues to be willful. Defendants have known of the '315 Patent since at least March 30, 2015.  Moreover, Stifneck collars are and have consistently been marked with the '315 Patent, so on information and belief Defendants' knowledge of the '315 Patent predates March 30, 2015.  Defendants knew or should

- 15 -

have known that their products infringe the '315 Patent, and Defendants have proceeded despite an objectively high likelihood that a court would find the products to be infringing.

61.     None of Defendants has or has ever had a license under the '315 Patent or any right to make, use, offer to sell, sell or import the invention claimed in the '315 Patent.

62.     Laerdal USA has sustained and continues to sustain significant damages as a direct and proximate result of Defendants' infringement of the '315 Patent.

63.     Laerdal USA will suffer and is suffering irreparable harm from Defendants' infringement of the '315 Patent.  Laerdal USA is entitled to an injunction against Defendants' continuing infringement of the '315 Patent.  Unless enjoined, Defendants will continue their infringing conduct.

64.     Defendants' infringement of the '315 Patent is exceptional and entitles Laerdal USA to attorneys' fees and costs incurred in prosecuting this action.

## COUNT II

## INFRINGEMENT OF THE '058 PATENT

### (Against Basic, Medsource International and Medsource Factory)

65.     Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

66.     The intended use of the Medsource Collar includes practicing the steps recited in claim 1 of Laerdal's '058 Patent.

67.     On information and belief, each Medsource Collar includes a "Manual of Cervical collar" [sic] that includes instructions for use of the collar.  These instructions for use instruct the user to perform each of the steps recited in claim 1 of the '058 Patent.

68.     Basic has infringed and continues to infringe claim 1 of the '058 Patent by using the Medsource Collar in the United States.

69.     Each of Defendants has induced and continues to induce infringement of claim 1 of the '058 Patent in the United States by, among others, emergency medical technicians,

- 16 -

paramedics and other first responders.  Each of Defendants has known of the '058 Patent since at least March 30, 2015, and has known or acted with willful blindness to the likelihood that the use of the Medsource Collar infringes the '058 Patent.  Each of Defendants knows and at all relevant times has known of the fact that each Medsource Collar includes a "Manual of Cervical collar" [sic] that includes instructions for use of the collar.  Each of Defendants intends that the infringing products be used in a manner that infringes the '058 Patent.

70.     Defendants' infringement of the '058 Patent has been and continues to be willful. Defendants have known of the '058 Patent since at least March 30, 2015.  Defendants knew or should have known that the use of the Medsource Collar infringes the '058 Patent, and Defendants have proceeded despite an objectively high likelihood that a court would find those uses to be infringing.

71.     None of Defendants has or has ever had a license under the '058 Patent or any right to make, use, offer to sell, sell or import the invention claimed in the '058 Patent.

72.     Laerdal USA has sustained and continues to sustain significant damages as a direct and proximate result of Defendants' infringement of the '058 Patent.

73.     Laerdal USA will suffer and is suffering irreparable harm from Defendants' infringement of the '058 Patent.  Laerdal USA is entitled to an injunction against Defendants' continuing infringement of the '058 Patent.  Unless enjoined, Defendants will continue their infringing conduct.

74.     Defendants' infringement of the '058 Patent is exceptional and entitles Laerdal USA to attorneys' fees and costs incurred in prosecuting this action.

## COUNT III

### INFRINGEMENT OF THE '627 PATENT

**(Against Basic, Medsource International and Medsource Factory)**

75.     Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

76.     The Medsource Spineboard includes the structure recited in at least claims 19, 22-28, 39, 50 and 53 of Laerdal's '627 Patent.

77.     Each of Defendants has infringed and continues to infringe at least claims 19, 22-28, 39, 50 and 53 of the '627 Patent by using, selling or offering to sell in the United States and/or by importing into the United States the Medsource Spineboard.

78.     Each of Defendants has induced and continues to induce infringement of one or more claims of the '627 Patent in the United States by, among others, emergency medical technicians, paramedics and other first responders.  Each of Defendants has known of the '627 Patent since at least March 30, 2015, and has known or acted with willful blindness to the likelihood that the use of the Medsource Spineboard infringes the '627 Patent.  Each of Defendants intends that the infringing products be used so as to infringe the '627 Patent.

79.     Defendants' infringement of the '627 Patent has been and continues to be willful. Defendants have known of the '627 Patent since at least March 30, 2015.  Moreover, BaXstrap spine boards are and have consistently been marked with the '627 Patent in, e.g., Directions for Use that accompany the product, so on information and belief Defendants' knowledge of the '627 Patent predates March 30, 2015.  Defendants knew or should have known that their products infringe the '627 Patent, and Defendants have proceeded despite an objectively high likelihood that a court would find the products to be infringing.

80.     None of Defendants has or has ever had a license under the '627 Patent or any right to make, use, offer to sell, sell or import the invention claimed in the '627 Patent.

- 18 -

81.    Laerdal USA has sustained and continues to sustain significant damages as a direct and proximate result of Defendants' infringement of the '627 Patent.

82.    Laerdal USA will suffer and is suffering irreparable harm from Defendants' infringement of the '627 Patent.  Laerdal USA is entitled to an injunction against Defendants' continuing infringement of the '627 Patent.  Unless enjoined, Defendants will continue their infringing conduct.

83.    Defendants' infringement of the '627 Patent is exceptional and entitles Laerdal USA to attorneys' fees and costs incurred in prosecuting this action.

## COUNT IV

## INFRINGEMENT OF THE '486 PATENT

### (Against Basic, Medsource International and Medsource Factory)

84.    Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

85.    The Medsource Immobilizer includes the structure recited in at least claims 1 and 6 of Laerdal's '486 Patent.

86.    Each of Defendants has infringed and continues to infringe at least claims 1 and 6 of the '486 Patent by using, selling or offering to sell in the United States and/or by importing into the United States the Medsource Immobilizer.

87.    Each of Defendants has induced and continues to induce infringement of one or more claims of the '486 Patent in the United States by, among others, emergency medical technicians, paramedics and other first responders.  Each of Defendants has known of the '486 Patent since at least March 30, 2015, and has known or acted with willful blindness to the likelihood that the use of the Medsource Immobilizer infringes the '486 Patent.  Each of Defendants intends that the infringing products be used so as to infringe the '486 Patent.

88.    Defendants' infringement of the '486 Patent has been and continues to be willful. Defendants have known of the '486 Patent since at least April 2, 2015.  Moreover, the Directions

for Use accompanying the Sta-Blok™ immobilizers are and have consistently been marked with a notice that the product is protected under the '486 Patent, so on information and belief Defendants' knowledge of the '486 Patent predates March 30, 2015.  Defendants knew or should have known that their products infringe the '486 Patent, and Defendants have proceeded despite an objectively high likelihood that a court would find the products to be infringing.

89.     None of Defendants has or has ever had a license under the '486 Patent or any right to make, use, offer to sell, sell or import the invention claimed in the '486 Patent.

90.     Laerdal USA has sustained and continues to sustain significant damages as a direct and proximate result of Defendants' infringement of the '486 Patent.

91.     Laerdal USA will suffer and is suffering irreparable harm from Defendants' infringement of the '486 Patent.  Laerdal USA is entitled to an injunction against Defendants' continuing infringement of the '486 Patent.  Unless enjoined, Defendants will continue their infringing conduct.

92.     Defendants' infringement of the '486 Patent is exceptional and entitles Laerdal USA to attorneys' fees and costs incurred in prosecuting this action.

## COUNT V

## INFRINGEMENT OF A FEDERALLY REGISTERED MARK ('656 REG.)

### (Against Basic, Medsource International and Medsource Factory)

93.     Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

94.     Laerdal owns the '656 Registration for the mark POCKET MASK for "cardiopulmonary resuscitation device, namely, protective oral barrier with disposable valve for use during mouth-to-mouth resuscitation to minimize cross moisture contact, in class 10."

95.     Laerdal's POCKET MASK mark is inherently distinctive or has acquired secondary meaning to, among others, emergency medical technicians, paramedics and other first responders and distributors that sell to those buyers (collectively, EMT buyers"), and has come

to indicate a particular source of CPR masks to such purchasers in the United States. Laerdal and Laerdal USA have invested substantial resources in promoting Laerdal-branded CPR masks under the POCKET MASK mark in the United States. Laerdal has done this by, among other things, prominently displaying the POCKET MASK mark on the packaging and containers for the goods and the displays associated therewith. In addition, Laerdal has prominently displayed the POCKET MASK mark on its website (http://www.laerdal.com), in periodicals distributed throughout the United States, in catalogs and at conventions and trade shows. Laerdal's uses and promotion of its CPR masks under the POCKET MASK mark in the United States are continuous and ongoing.

96.    Laerdal gives and has given notice that its POCKET MASK mark is registered  on the Principal Register of the U.S. Patent and Trademark Office by displaying with the mark the registration symbol "®."  Laerdal's use of the registration symbol put Defendants on notice of Laerdal's rights in the mark.

97.    Each of Defendants has intentionally used, without authorization, the POCKET MASK mark in connection with the sale, offering for sale, distribution, advertising and/or promotion of competing goods, i.e., CPR masks, in interstate commerce in the United States. Defendants have used and are using the spurious "Pocket Mask" mark on goods for which the POCKET MASK mark was registered, i.e., "cardiopulmonary resuscitation device, namely, protective oral barrier with disposable valve for use during mouth-to-mouth resuscitation to minimize cross moisture contact, in class 10."

98.    Defendants sell their "Pocket Mask"-branded CRP masks to the same market, i.e., EMT buyers, and through the same or similar channels of trade as does Laerdal with respect to its genuine POCKET MASK CPR masks.

99.    Defendants' use of the POCKET MASK mark in connection with the sale, offering for sale, distribution, and advertising of their CPR masks is likely to cause confusion, or to cause mistake, or to deceive.

- 21 -

100.    Defendants infringe the '656 Registration and Laerdal's rights in the POCKET MASK mark, and their infringement has been and continues to be willful and intentional. Defendants have known of the '656 Registration and Laerdal's use of the POCKET MASK mark to brand its CPR masks since at least April 2, 2015 and, on information and belief, long before that date.  Defendants knew or should have known that their use of the "Pocket Mask" mark in connection with the sale, offering for sale, distribution, and advertising of their CPR masks branded under that mark would be likely to cause confusion, or to cause mistake, or to deceive, and they infringed Laerdal's '656 Registration and Laerdal's rights in the POCKET MASK mark with the intent to cause confusion, or to cause mistake, or to deceive.

101.    Defendants' "Pocket Mask" mark is identical to or substantially indistinguishable from Laerdal's registered POCKET MASK mark, and Defendants know and have at all relevant times known that their "Pocket Mask" mark was a counterfeit of Laerdal's genuine POCKET MASK mark.

102.    None of Defendants has or has ever had a license under the '656 Registration or the POCKET MASK mark or any right to use the POCKET MASK mark.

103.    Laerdal has sustained and continues to sustain significant damages as a direct and proximate result of Defendants' infringement of the '656 Registration and Laerdal's rights in the POCKET MASK mark.

104.    Laerdal will suffer and is suffering irreparable harm from Defendants' infringement of the '656 Registration and Laerdal's rights in the POCKET MASK mark. Laerdal is entitled to an injunction against Defendants' continuing infringement of the '656 Registration and Laerdal's rights in the POCKET MASK mark.  Unless enjoined, Defendants will continue their infringing conduct.

105.    Defendants' infringement of the '656 Registration and Laerdal's rights in the POCKET MASK mark is exceptional and entitles Laerdal to attorneys' fees and costs incurred in prosecuting this action.

17526.0010 -V1

**COUNT VI**

**INFRINGEMENT OF A FEDERALLY REGISTERED MARK ('147 REG.)**

**(Against Basic and Medsource Factory)**

106.　　Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

107.　　Laerdal owns the '147 Registration for the mark BAXSTRAP. The '147 Registration covers the use of the mark for "medical apparatus, namely, stretchers, spine boards, spine board straps, head immobilizers, alignment pads, backboard pads, in class 10."

108.　　Laerdal's BAXSTRAP mark is inherently distinctive or has acquired secondary meaning to, among others, EMT buyers, and has come to indicate a particular source of spine boards to such purchasers in the United States. Laerdal and Laerdal USA have invested substantial resources in promoting Laerdal-branded spine boards under the BAXSTRAP mark in the United States. Laerdal has done this by, among other things, prominently displaying the BAXSTRAP mark on the packaging and containers for the goods and the displays associated therewith. In addition, Laerdal has prominently displayed the BAXSTRAP mark on its website (http://www.laerdal.com), in periodicals distributed throughout the United States, in catalogs and at conventions and trade shows. Laerdal's uses and promotion of its spine boards under the BAXSTRAP mark in the United States are continuous and ongoing.

109.　　Laerdal gives and has given notice that its BAXSTRAP mark is registered on the Principal Register of the U.S. Patent and Trademark Office by displaying with the mark the registration symbol "®." Laerdal's use of the registration symbol put Defendants on notice of Laerdal's rights in the mark.

110.　　Each of Basic and Medsource Factory has intentionally used, without authorization, the BAXSTRAP mark in connection with the sale, offering for sale, distribution, advertising and/or promotion of competing goods, i.e., spine boards, in interstate commerce in the United States. Defendants have used and are using the spurious "BaXstrap" mark on goods

- 23 -

for which the BAXSTRAP mark was registered, i.e., "medical apparatus, namely, stretchers, spine boards, spine board straps, head immobilizers, alignment pads, backboard pads, in class 10."

111.   Basic and Medsource Factory sell their "BaXstrap"-branded spine boards to the same market, i.e., EMT buyers, and through the same or similar channels of trade and marketing as does Laerdal with respect to its genuine BAXSTRAP spine boards.

112.   Basic and Medsource Factory's use of the "BaXstrap" mark in connection with the sale, offering for sale, distribution, and advertising of their spine boards branded under that mark is likely to cause confusion, or to cause mistake, or to deceive.

113.   Basic and Medsource Factory infringe the '147 Registration and Laerdal's rights in the BAXSTRAP mark, and their infringement has been and continues to be willful and intentional.  On information and belief, Basic and Medsource Factory have known of the '147 Registration and Laerdal's use of the BAXSTRAP mark to brand its spine boards since at least March 30, 2015, when they were informed of the BaXstrap product and mark, as well as long before that date.  Basic and Medsource Factory knew that their use of the "BaXstrap" mark in connection with the sale, offering for sale, distribution, and advertising of their spine boards branded under that mark would be likely to cause confusion, or to cause mistake, or to deceive, and they infringed Laerdal's '147 Registration and Laerdal's rights in the BAXSTRAP mark with the intent to cause confusion, or to cause mistake, or to deceive.

114.   Basic and Medsource Factory's "BaXstrap" mark is identical to or substantially indistinguishable from Laerdal's registered BAXSTRAP mark, and Basic and Medsource Factory know and have at all relevant times known that their "BaXstrap" mark was a counterfeit of Laerdal's genuine BAXTRAP mark.

115.   Neither of Basic and Medsource Factory has or has ever had a license under the '147 Registration or the BAXSTRAP mark or any right to use the BAXSTRAP mark.

- 24 -

116.    Laerdal has sustained and continues to sustain significant damages as a direct and proximate result of Basic and Medsource Factory's infringement of the '147 Registration and Laerdal's rights in the BAXSTRAP mark.

117.    Laerdal will suffer and is suffering irreparable harm from Basic and Medsource Factory's infringement of the '656 Registration and Laerdal's rights in the BAXSTRAP mark. Laerdal is entitled to an injunction against Basic and Medsource Factory's continuing infringement of the '656 Registration and Laerdal's rights in the BAXSTRAP mark.  Unless enjoined, Basic and Medsource Factory will continue their infringing conduct.

118.    Basic and Medsource Factory's infringement of the '656 Registration and Laerdal's rights in the BAXSTRAP mark is exceptional and entitles Laerdal to attorneys' fees and costs incurred in prosecuting this action.

## COUNT VII

## UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125

### (Against Basic, Medsource International and Medsource Factory)

119.    Plaintiffs restate and incorporate by reference their previous allegations above, as if fully set forth herein.

120.    Laerdal has used the STA-BLOK mark in commerce in the United States to brand its head immobilizers since at least January 2003.

121.    The STA-BLOK mark is inherently distinctive or has acquired secondary meaning to, among others, EMT buyers, and has come to indicate a particular source of head immobilizers to such purchasers in the United States.  Laerdal and Laerdal USA have invested substantial resources in promoting Laerdal-branded head immobilizers under the STA-BLOK mark in the United States.  Laerdal has done this by, among other things, prominently displaying the STA-BLOK mark on the packaging and containers for its goods and the displays associated therewith.  In addition, Laerdal has prominently displayed the STA-BLOK mark on its website (http://www.laerdal.com), in periodicals distributed throughout the United States, in catalogs and

at conventions and trade shows.  Laerdal's uses and promotion of its head immobilizers under the STA-BLOK mark in the United States are continuous and ongoing.

122.    Each of Defendants has used, without authorization, the STA-BLOK mark in connection with the sale, offering for sale, distribution, advertising and/or promotion of competing goods, i.e., head immobilizers, in interstate commerce in the United States.   For example, on their websites, each of Defendants refers to the Medsource Immobilizer as "he [sic] Sta-Blok . . . ."

123.    Defendants sell their "Sta-Blok"-branded head immobilizers to the same market, i.e., EMT buyers, and through the same or similar channels of trade and marketing as does Laerdal with respect to its genuine STA-BLOK head immobilizers.

124.    Defendants' use of the "Sta-Blok" mark in connection with the sale, offering for sale, distribution, and advertising of their spine boards branded under that mark is likely to cause confusion, or to cause mistake, or to deceive.

125.    Defendants infringe Laerdal's rights in the STA-BLOK mark, and their infringement has been and continues to be willful and intentional.  Defendants have known of Laerdal's use of the STA-BLOK mark to brand its head immobilizers since at least April 2, 2015 and, on information and belief, long before that date.  Defendants knew or should have known that their use of the "Sta-Blok" mark in connection with the sale, offering for sale, distribution, and advertising of their head immobilizers would be likely to cause confusion, or to cause mistake, or to deceive, and they infringed Laerdal's rights in the STA-BLOK mark with the intent to cause confusion, or to cause mistake, or to deceive.

126.    None of Defendants has or has ever had a license under the STA-BLOK mark or any right to use the STA-BLOK mark.

127.    Laerdal has sustained and continues to sustain significant damages as a direct and proximate result of Defendants' infringement of Laerdal's rights in the STA-BLOK mark.

- 26 -

128.    Laerdal will suffer and is suffering irreparable harm from Defendants' infringement of Laerdal's rights in the STA-BLOK mark.  Laerdal is entitled to an injunction against Defendants' continuing infringement of Laerdal's rights in the STA-BLOK mark. Unless enjoined, Defendants will continue their infringing conduct.

129.    Defendants' infringement of Laerdal's rights in the STA-BLOK mark is exceptional and entitles Laerdal to attorneys' fees and costs incurred in prosecuting this action.

## DEMAND FOR JURY TRIAL

130.    Plaintiffs hereby demand a jury trial on all claims, damages and any other issues presented herein that are triable to a jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that the Court enter judgment as follows:

A.    That each of Defendants has infringed and continues to infringe the '315 Patent and that the '315 Patent is not invalid and is enforceable;

B.    That each of Defendants has infringed and continues to infringe the '058 Patent and that the '058 Patent is not invalid and is enforceable;

C.    That each of Defendants has infringed and continues to infringe the '627 Patent and that the '627 Patent is not invalid and is enforceable;

D.    That each of Defendants has infringed and continues to infringe the '486 Patent and that the '486 Patent is not invalid and is enforceable;

E.    That each of Defendants has infringed and continues to infringe the '656 Registration and Laerdal's rights in the POCKET MASK mark, and that the '656 Registration is not invalid and is enforceable;

F.    That each of Defendants has infringed and continues to infringe the '147 Registration and Laerdal's rights in the BAXSTRAP mark, and that the '147 Registration is not invalid and is enforceable;

17526.0010 -V1

G.      That each of Defendants has infringed and continues to infringe Laerdal's rights in the STA-BLOK mark;

H.      Awarding Plaintiffs damages adequate to compensate them for Defendants' wrongful acts, in an amount to be determined at trial, but no less than $1,000,000;

I.      Awarding Laerdal defendants' profits allocable to their infringing conduct with respect to Counts V-VII above;

J.      Awarding Laerdal statutory damages with respect to Counts V-VI above in the maximum amount permitted by law for willful infringement, i.e., the amount of $2,000,000 per counterfeit mark per type of good, which amounts in total to $4,000,000;

K.      Awarding a preliminary and permanent injunction restraining and enjoining each of Defendants, and their officers, agents, servants, employees, attorneys, and any persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from:

a.      Making, using, selling, offering to sell or importing in or into the United States any and all of the products and services identified in Counts I-IV above;

b.      Infringing, inducing the infringement of or contributing to the infringement of (i) any of Laerdal's patents identified in Counts I-IV above, (ii) any of Laerdal's federal trademark registrations identified in Counts V-VI above, and (iii) any of Laerdal's rights in the marks identified in Counts V-VII above;

c.      Selling, offering for sale, distributing, advertising and/or promoting any CPR masks under the POCKET MASK mark or any other mark confusingly similar to the POCKET MASK mark, or in any other way using the POCKET MASK or any mark confusingly similar to the POCKET MASK mark for goods or services, on the Internet, in a domain name, email address, meta tag, invisible data, or otherwise for engaging in acts or conduct that would cause confusion or mistake or tend to deceive as to the source of any of Defendants' product or suggest sponsorship by or affiliation with Plaintiffs;

- 28 -

d.   Selling, offering for sale, distributing, advertising and/or promoting any stretchers, spine boards, spine board straps, head immobilizers, alignment pads, or backboard pads under the BAXSTRAP mark or any other mark confusingly similar to the BAXSTRAP mark, or in any other way using the BAXSTRAP mark or any mark confusingly similar to the BAXSTRAP mark for goods or services, on the Internet, in a domain name, email address, meta tag, invisible data, or otherwise for engaging in acts or conduct that would cause confusion or mistake or tend to deceive as to the source of any of Defendants' product or suggest sponsorship by or affiliation with Plaintiffs;

e.   Selling, offering for sale, distributing, advertising and/or promoting any head immobilizer under the STA-BLOK mark or any other mark confusingly similar to the STA-BLOK mark, or in any other way using the STA-BLOK mark or any mark confusingly similar to the STA-BLOK mark for goods or services, on the Internet, in a domain name, email address, meta tag, invisible data, or otherwise for engaging in acts or conduct that would cause confusion or mistake or tend to deceive as to the source of any of Defendants' product or suggest sponsorship by or affiliation with Plaintiffs;

L.   Requiring that Defendants destroy all goods found to be infringing pursuant to Counts I-VII above;

M.   Ordering seizure of all goods found to be infringing pursuant to Counts I-VII above;

N.   Trebling all damages awarded to Plaintiffs;

O.   Finding this case exceptional and awarding to Plaintiffs their reasonable attorneys' fees incurred in prosecuting their claims for patent infringement;

P.   Costs and interest (prejudgment and post-judgment);

Q.   Such other relief as the Court determines to be just and proper, including but not limited to post-judgment damages, interest, and equitable remedies.

- 29 -

DATED: January 6, 2016

By: _____ */s/ Eric J. Enger* _____

Eric J. Enger
Texas State Bar No.: 24045833
Southern District of Texas Bar No.: 608058
Email: eenger@hpcllp.com
HEIM, PAYNE & CHORUSH, L.L.P.
600 Travis, Suite 6710
Houston, Texas 77002
Telephone:(713) 221-2016
Facsimile: (713) 221-2021

Philip J. Graves (To Be Admitted *Pro Hac Vice*)
California State Bar No.: 153441
Email: philipg@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

**Counsel for Plaintiffs Laerdal Medical
Corporation and Laerdal Medical A/S**

- 30 -