**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LAERDAL MEDICAL CORPORATION, | § | |
| LAERDAL MEDICAL A/S, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-35 |
| | § | |
| BASIC MEDICAL SUPPLY, LLC, *et al.* | § | |
| | § | |
| *Defendants*. | § | |

**AMENDED MEMORANDUM OPINION & ORDER**

Pending before the court are plaintiffs Laerdal Medical Corporation and Laerdal Medical A/S's (collectively "Laerdal") motion for entry of default judgment[1] against defendants Basic Medical Supply, LLC ("Basic Medical"), Medsource International Co., Ltd. ("Medsource International"), and Medsource Factory, Inc. ("Medsource Factory") (collectively, "Defendants"), jointly and severally. Dkt. 16. On October 4, 2016, the court granted the motion as to liability. Dkt. 23. On October 18, 2016, the court held an evidentiary hearing on damages. Dkts. 26, 27. Having considered the motion, affidavits, exhibits, other relevant documents in the record, and the applicable law, the court is of the opinion that the motion for default judgment should be GRANTED IN PART and the Defendants should be PERMANENTLY ENJOINED from using Laerdal's patents and marks.

**I. BACKGROUND**

This is a patent and trademark infringement case against the Defendants who market and sell

---

[1] Laerdal's motion to modify the injunction and amend the order granting default judgment is GRANTED. Dkt. 32.

medical supplies. On January 6, 2016, plaintiffs filed a complaint alleging (1) counterfeiting of Laerdal's registered marks POCKET MASK (U.S. Trademark Registration No. 3,476,656) and BAXSTRAP (U.S. Trademark Registration No. 3,735,147) under the Lanham Act, 15 U.S.C. § 1114(1) and 1116(d) (2005); (2) infringement of Laerdal's STA-BLOK mark and instruction manual under § 1125(a); (3) infringement of the following patents: U.S. Patent No. 5,795,315 (" '315 Patent"), U.S. Patent No. 6,090,058 (" '058 Patent"), U.S. Patent No. 5,950,627 (" '627 Patent"), and U.S. Patent No. 6,170,486 (" '486 Patent"). Dkt. 1. Laerdal seeks statutory damages of $4,000,000 for infringement of its two registered marks, damages no less than $1,000,000, attorneys' fees, costs, and injunctive relief. *Id.*

On February, 11, 2016, Laerdal served each of the Defendants through the same registered agent, Incorp Services, Inc. in Travis County, Texas. Dkts. 11–13. None of the Defendants have signed a waiver of service, filed an answer, or otherwise participated in this action. Dkt. 17. Accordingly, the time by which the Defendants may file a responsive pleading has expired. Fed. R. Civ. P. 12(a)(a)(A)(i). On April 22, 2016, Laerdal filed a request for entry of default against all of the Defendants and on June 17, 2016, filed this motion for default judgment and submitted it via certified mail, return receipt requested to the Defendants's registered agent. Dkts. 14, 16; LR 5.5.

On October 4, 2016, the court granted Laerdal's motion for default judgment (Dkt. 16) as to liability only (Dkt. 23). On October 18, 2016, the court conducted an evidentiary hearing to determine (1) whether to permanently enjoin the Defendants, and (2) the amount of damages, attorneys' fees, and costs to be awarded to Laerdal. Dkts. 26, 27. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) ("The law is clear that a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."). Laerdal certified that notice of the October 18, 2016 hearing was served

upon the Defendants's registered agent via certified mail, return receipt requested.  Dkt. 26.  At the evidentiary hearing, Laerdal presented  seventy-eight (78) exhibits as well as the testimony of Mr. Philip Graves, Laerdal's lead counsel.  Dkt. 27.  Laerdal seeks the maximum amount allowed for statutory damages, a total of $4,000,000 for infringement on its two registered marks, POCKET MASK and BAXSTRAP, attorneys' fees, costs, and injunctive relief.  Dkt. 16. The court now addresses Laerdal's request for a permanent injunction, statutory damages, attorneys' fees and costs.

## II. Legal Standard

### A. Default Judgment

Pursuant to Federal Rule of Civil Procedure 55, entry of a default judgment is appropriate when a party has failed to plead or otherwise defend claims against them, and that failure is shown by affidavit or otherwise.  Fed. R Civ. P. 55(a).  The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when it needs to (1) conduct an accounting; (2) determine the amount of damages; (3) establish the truth of any allegation by evidence; or (4) investigate any other matter. Fed. R. Civ. P. 55(b).  Given the Defendants's failure to answer the complaint, the court has the authority to accept all well-pleaded facts in the complaint as true and to award relief.  *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). While alleged facts are taken as true, the court has discretion to award damages.  *See U.S. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After the clerk enters a default, "the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages.").

### B. Lanham Act

The Lanham Act, which encompasses federal trademark and unfair competition law, protects both mark owners and consumers by providing mark owners a cause of action against others who

3

subsequently adopt the same or a confusingly similar mark. *See* 15 U.S.C. §§ 1114(1), 1125(a) (2005). The Lanham Act allows plaintiffs "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117 (2008).  "In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  *Id.*  Courts may also award attorneys' fees when the case is deemed to be "exceptional."  *Id.*  A plaintiff may elect to recover statutory damages rather than actual damages and profits. *Id.*  The governing section on statutory damages states:

> [T]he plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of–
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just;
>
> or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (2008).

### III. ANALYSIS

**A. Injunctive Relief**

A plaintiff is entitled to a permanent injunction to prevent any future trademark or patent infringement by a defendant.  15 U.S.C. § 1116(a) (2008); 35 U.S.C. § 283 (1952).  A court may issue a permanent injunction as part of a default judgment. *Twist and Shout Music v. Longneck Xpress, N.P.*, 441 F.Supp. 2d 782, 785 (E.D. Tex. June 28, 2006). To be entitled to a permanent injunction, a party must show (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, an equitable remedy is warranted; and

(4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006).  Plaintiff bears the burden to prove all four requirements.  *Id.*

Laerdal established the four (4) necessary elements for a permanent injunction for Defendants's use of Laerdal's marks and for selling products covered by Laerdal's '315, '058, '627, and '486 Patents.  First, there is a substantial threat that Laerdal will suffer irreparable harm without an injunction because of the Defendants's repeated refusal to stop infringing upon Laerdals' marks and patents.  Even after Laerdal filed its complaint and sent three cease and desist letters, the Defendants have not removed all infringing products from its websites.  Dkts. 16, 17.  At the evidentiary hearing, Mr. Phillip Graves testified that the Defendants's websites still contain downloadable catalogues with the infringing products and that two of the Defendants's websites contain a link redirecting consumers to another website that still advertises the infringing products, including a line of cervical collars that the Defendants refer to as "Adjustale [sic] Extriculation Collar," "BaXstrap" spineboard, "Sta-Blok" or "Head Immobilizer(100)" Dkts. 1, 16, 26.  The Defendants's  apparent copying of Laerdal's patented products and the willful nature of their infringement further suggest irreparable harm.

Second, Laerdal has succeeded on the merits by obtaining a default judgment, where Laerdal's complaint, taken as true, established trademark and patent infringement.  Dkts. 1, 16.  Further, given that the Defendants include foreign entities in China who have not responded to this suit, it may be difficult or impossible to collect against them.  Third, the threatened injury to Laerdal (damage to its business reputation and consumer confusion as to the source of goods) outweighs any damage the injunction may cause the Defendants who have no legitimate interest in continuing their infringement.  Finally, the injunction will not disserve the public interest.  It will reduce consumer

5

confusion in the U.S. market for medical devices.  Taken together, all four factors favor the entry of a permanent injunction.

Accordingly, each of the Defendants, and their officers, agents, servants, employees, attorneys, and any persons in active concert or participation with them, are PERMANENTLY ENJOINED from:

a)      Making, using, selling, offering to sell or importing in or into the United States (i) the Adjustale [sic] Extrication Collar (MS-EX700, MS-EX701) (the "Infringing Collars") or any product not more than colorably different from the Infringing Collars through the expiration of the last to expire of Patents '315 and '058; (ii) the BaXstrap or BasicStrap spineboard (Backboard(BB9), MS-BB9Y, MS-BB9OR, MS-BB9BL) (the "Infringing Spineboards") or any product not more than colorably different from the Infringing Spineboards through the expiration of Patent '627; or (iii) the Head Immobilizer(100) (the "Infringing Immobilizer") or any product not more than colorably different from the Infringing Immobilizer through the expiration of Patent '486;

b)      Providing instructions for use of any of the Infringing Collars, the Infringing Spineboards, or the Infringing Immobilizers (collectively, the "Patent Infringing Products"), or otherwise knowingly inducing, encouraging or causing any other person or entity to engage in any of the acts enjoined in paragraph (a) above;

c)      Offering to sell or selling or importing in or into the United States a component of any of the Patent Infringing Products, constituting a material part of the same, knowing it to be especially made or adapted for use in or with one or more of such Patent Infringing Products and not a staple article of commerce suitable for substantial non-infringing use, through the expiration of the applicable Laerdal patents as set forth in paragraph (a) above;

6

d.      (i) Selling, offering, distributing, advertising, promoting or providing any CPR masks or similar or related product under the POCKET MASK mark (U.S. Trademark Reg. No. 3,476,656) or any other mark confusingly similar to the POCKET MASK mark; (ii) using the POCKET MASK mark or any confusingly similar mark in a domain name, email address, meta tag, or invisible data in connection with the offer, promotion, distribution, sale, advertisement or provision of medical products or services; (iii) in any other way using the POCKET MASK or any mark confusingly similar to the POCKET MASK mark in connection with the offer, promotion, distribution, sale, advertisement or provision of medical products or services; or (iv) otherwise engaging in acts or conduct involving the use of the POCKET MASK mark or any confusingly similar mark that would cause confusion or mistake or tend to deceive as to the source of any of the Defendants's product or suggest sponsorship by or affiliation with Laerdal;

(e)      (i) Selling, offering, distributing, advertising, promoting or providing any spineboards or similar or related product under the BAXSTRAP mark (U.S. Trademark Reg. No. 3,735,147) or any other mark confusingly similar to the BAXSTRAP mark; (ii) using the BAXSTRAP mark or any confusingly similar mark in a domain name, email address, meta tag, or invisible data in connection with the offer, promotion, distribution, sale, advertisement or provision of medical products or services; (iii) in any other way using the BAXSTRAP or any mark confusingly similar to the BAXSTRAP mark in connection with the offer, promotion, distribution, sale, advertisement or provision of medical products or services; or (iv) otherwise engaging in acts or conduct involving the use of the BAXSTRAP mark or any confusingly similar mark that would cause confusion or mistake or tend to deceive as to the source of any of the Defendants's product or suggest sponsorship by or affiliation with Laerdal;

(f)      (i) Selling, offering, distributing, advertising, promoting or providing any Infringing Immobilizers, or similar or related product under the STA-BLOK mark or any other mark confusingly similar to the STA-BLOK mark; (ii) using the STA-BLOK mark or any confusingly similar mark in a domain name, email address, meta tag, or invisible data in connection with the offer, promotion, distribution, sale, advertisement or provision of medical products or services; (iii) in any other way using the STA-BLOK or any mark confusingly similar to the STA-BLOK mark in connection with the offer, promotion, distribution, sale, advertisement or provision of medical products or services; or (iv) otherwise engaging in acts or conduct involving the use of the STA-BLOK mark or any confusingly similar mark that would cause confusion or mistake or tend to deceive as to the source of any of the Defendants's product or suggest sponsorship by or affiliation with Laerdal;

(g)      Knowingly inducing, encouraging or causing any other person or entity to engage in any of the acts enjoined in paragraphs (d)–(f) above.

Within thirty (30) days of the date on when the Defendants are served with this order, the Defendants are ORDERED to file with the court and serve on plaintiffs a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction. *See* 15 U.S.C. § 1116(a) (2008) (authorizing the court to order the defendants to file a report demonstrating compliance).

## B. Statutory Damages

Laerdal has elected to receive statutory damages under the Lanham Act in lieu of lost profits for the Defendants's infringement of two of Laerdal's registered marks, POCKET MASK and BAXSTRAP. Dkt. 16.  Laerdal requests the maximum statutory damages of $2,000,000 per mark. *Id.*  "The Fifth Circuit has held that great latitude is given the district court in awarding damages

under the Lanham Act, which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement." *Coach, Inc. v. Brightside Boutique*, No. 1:11–CA–20 LY, 2012 WL 32941, at *5 (W.D. Tex. Jan. 6, 2012) (quoting *Holiday Inns, Inc. v. Alberding*, 683 F.2d 931, 935 (5th Cir. 1982)).

The Lanham Act does not provide guidance on determining an appropriate amount of statutory damages.  However, courts often find guidance in awards assessed under the Copyright Act. *See, e.g.*, *Philip Morris USA Inc., v. Lee*, 547 F.Supp.2d 685, 695 (W.D. Tex. April 8, 2008); *Neutron Depot, LLC v. Bankrate, Inc.*, No. 2:14-CV-192, 2016 WL 258343, at *3 (S.D. Tex. Jan. 20, 2016).  In copyright cases, the Fifth Circuit has determined that "in cases involving multiple infringements and multiple infringed works, the total number of awards of statutory damages . . . that a plaintiff may recover in any given action depends on the number of works that are infringed . . . regardless of the number of infringements of those works." *Berg v. Symons*, 393 F.Supp.2d 525, 539 (S.D. Tex. Sept. 30, 2005) (citing *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143 (5th Cir. 1992) (internal quotations omitted).

To determine where an award should lie on the range of statutory damages, courts consider factors such as: "the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and on others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff." *Commercial Law League of Am., Inc. v. George, Kennedy & Sullivan, LLC*, No. CIV.A. H-07-0315, 2007 WL 2710479, at *3 (S.D. Tex. Sept. 14, 2007) (Rosenthal, J.) (awarding $10,000 in statutory damages due to the willfulness of defendants's conduct and the continued use of the mark after receiving cease and desist letters); *see Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (awarding damages based on whether the defendant has

9

cooperated in providing records to assess the value of the infringing material, and on the potential for discouraging the defendant from engaging in similar behavior); *see also Neutron Depot*, 2016 WL 258343, at *3 (awarding statutory damages in lieu of actual damages because plaintiff provided no evidence of defendant's profits, saved expenses, or plaintiff's lost revenue; court awarded $100,000 for one trademark violation and $1,000,000 for "willfully infringing" the trademark).

In the instant case, three of the five factors (willfulness of the Defendants's conduct, the need to deter the Defendants's conduct, and the Defendants's lack of cooperation) justify a substantial award of statutory damages per counterfeit mark. The Defendants have continued to infringe on the marks after receiving cease and desist letters, the initiation of this lawsuit, and the court's October 4, 2016 order finding liability (Dkt. 26). In light of the facts, the court finds that an award of $500,000 per infringing mark is appropriate, totaling $1,000,000 in statutory damages.

## C. Attorneys' Fees

Pursuant to 15 U.S.C. § 1117(a) (2008), a court may award reasonable attorneys' fees in exceptional cases. "[A]n exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*; *see also Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (applying *Octane Fitness*' definition of "exceptional" to Lanham Act cases). An exceptional case is one in which the defendant's infringement can be characterized as "malicious," "fraudulent," deliberate," or "willfull." *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co.*, 520 F.3d 393, 402 (5th Cir. 2008).  While there is no evidence about the Defendants's state of mind,

some courts have found that defendants are deemed to have admitted they acted knowingly and intentionally by virtue of their default. *Sculpt, Inc. v. Sculpt New York, LLC*, No. H-14-3398, 2015 WL 6690224 at *5 (S.D. Tex. Nov. 3, 2015); *Neutron Depot*, 2016 WL 258343 at *4.   The prevailing party must show the exceptional nature of the case by clear and convincing evidence. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 490 (5th Cir. 2004).

Laerdal argues that the instant case is "exceptional" because the Defendants have continued to use Laerdal's marks in their marketing of the infringed products online.   Dkts. 16, 17.   Even after three separate cease and desist letters, an email from the Defendants acknowledging the March 30, 2015 cease and desist letter, and the initiation of this lawsuit, Laerdal claims that the infringement has continued. *Id.*   Particularly, Laerdal reports that some products have been "removed from their websites (but not from their downloadable catalogs)."   Dkt. 16 at 24.   This court finds this case is exceptional by virtue of the Defendants's default and the continued infringement of Laerdal's products.   Accordingly, Laerdal's reasonable attorneys' fees and costs are GRANTED in the amount of $168,546.84.   Dkt. 27, Ex. 12, 13, 14; Dkt. 29, Ex. 1, 2.

### IV. CONCLUSION

The Defendants are hereby ORDERED to pay Plaintiffs statutory damages in the amount of $1,000,000, attorneys' fees and costs in the amount of $168,546.84, and post-judgment interest.   The Defendants, its representatives, agents, employees, and all persons acting in concert are PERMANENTLY ENJOINED and prohibited from manufacturing, importing, promoting, marketing, distributing, selling, offering for sale, advertising, or providing any products in connection with Laerdal's '315, '058, '627, and '486 Patents, its registered POCKET MASK and BAXSTRAP marks, or any other patent, trademark or trade dress that is confusingly similar to

11

Laerdal's marks.  Within thirty (30) days of the date on when the Defendants are served with this order, the Defendants are ORDERED to file with the court and serve on plaintiffs a report in writing under oath setting forth in detail the manner and form in which the Defendants have complied with the injunction.

Signed at Houston, Texas on November 15, 2016.

Gray H. Miller
United States District Judge